**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **JAMES DAREN O'BERRY and JEWELL O'BERRY**,<br><br>     Plaintiffs,<br><br>v.<br><br>**SANDY TURNER, ADM TRUCKING INC, ARCHER DANIELS MIDLAND COMPANY, and OLD REPUBLIC INSURANCE COMPANY**,<br><br>     Defendants. | Civil Action No. 7:15-CV-00064-HL |
| **RODNEY HOLMES**,<br><br>     Plaintiff**,**<br><br>**v.**<br><br>**SANDY TURNER, ADM TRUCKING INC, ARCHER DANIELS MIDLAND COMPANY, and OLD REPUBLIC INSURANCE COMPANY**,<br><br>     Defendants**.** | Civil Action No. 7:15-CV-00075-HL |

**ORDER**

Before the Court is Plaintiffs' Motion for Sanctions, made orally during a telephone conference on this matter on February 2, 2016, and Brief in Support (No. 7:15-CV-64, ECF No. 32).  Plaintiffs urge the Court to sanction Defendants for failing to produce: (1) Defendant Sandy Turner's driver log; (2) the

1

electronically stored information from PeopleNet regarding the truck that was being operated by Defendant Turner on June 21, 2013; and (3) Defendants' Rule 26 expert witness report[1]. The Court held an evidentiary hearing on these issues at the courthouse in Valdosta, Georgia, on February 11, 2016. For the reasons outlined below, Plaintiffs' Motion for Sanctions is granted, as to Defendants ADM Trucking, Inc. and Archer Daniels Midland Company .[2]

## I.    FACTS

This case arises out of a car accident that occurred in Homerville, Clinch County, Georgia on June 21, 2013. Plaintiff James O'Berry was driving a vehicle in the right hand lane, traveling west on Dame Avenue. Defendant Sandy Turner was driving his tractor trailer truck in the left hand lane, also traveling west on Dame Avenue. Allegedly "[w]ithout warning or justification," Defendant Turner swerved into the right hand lane, striking the vehicle driven by Plaintiff James O'Berry and running the vehicle off of the road and into a light pole. Plaintiff Rodney Holmes was a passenger in the vehicle driven by James O'Berry. At the time of the accident, Defendant Turner was operating the tractor trailer truck as

---

[1] The issue of Defendants' failure to produce an expert witness report was resolved prior to the hearing on this Motion, when Defendants withdrew this expert. Thus, the expert witness report no longer requires the attention of the Court.

[2] At the hearing held on this Motion, the Parties agreed that any sanctions ordered would not apply to Defendants Sandy Turner and Old Republic Insurance Company, because neither of these Defendants had control over the at-issue evidence. Transcript of Proceedings at 68, O'Berry v. Turner, No. 7:15-CV-00064, ECF No. 31.

an employee on behalf of Defendants ADM Trucking, Inc. ("ADM") and Archer Daniels Midland Company.

The Court conferred with counsel in this case by telephone on February 3, 2016.  At issue was Defendants' failure to produce Defendant Turner's driver log, the electronically stored information from PeopleNet regarding the truck that was being operated by Defendant Turner on June 21, 2013, and Defendants' Rule 26 expert witness report.  During the teleconference, Mr. Jack Helms, attorney for Plaintiffs James and Jewell O'Berry, explained to the Court that he faxed a spoliation letter to the risk management division of ADM on August 18, 2013. The spoliation letter requested that ADM preserve driver logs, information gathered from the truck, and information about the truck itself, among other things.   Mr. Helms received a response from counsel for Defendants, acknowledging receipt of the spoliation letter and stating that Defendants would take "all measures necessary" to preserve the evidence set forth in the spoliation letter.   Despite numerous attempts to obtain this evidence from counsel for Defendants, Plaintiffs never received the driver logs and the electronically stored data from PeopleNet.   On January 26, 2016, Mr. Helms contacted the Court regarding Defendants' failure to provide the information.   After contacting the Court, Mr. Helms received a letter from counsel for Defendants stating that the desired information had been "inadvertently destroyed."

At the hearing on this Motion, the remaining issue to address was whether Defendants should be sanctioned for failing to preserve Defendant Turner's

driver logs and PeopleNet data from his truck.  Tracy Causey, a former loss control manager for ADM, testified at the hearing.  Mr. Causey explained that when an accident occurred, his job was to print copies of the driver's log and any information collected on PeopleNet, for at least the most recent thirty-day period. These documents were then kept in a manila folder, along with any additional documents related to the incident.  Printing the driver's log and PeopleNet data did not require Mr. Causey to download any documents to his computer's storage—this information was printed straight from a website.  Mr. Causey is not aware of any ADM policies that govern the collection process or storage of these accident files—it was simply a part of his job to print and store a single paper copy of these documents.

With respect to this particular accident, Mr. Causey testified that he printed Defendant Turner's driver log and PeopleNet data and placed it in a manila folder on his desk after the accident occurred.  The folder remained on his desk while Mr. Causey waited to receive additional documentation, including the accident report and any photographs taken at the scene.  After a period of time, the folder was moved to a cabinet in his office, where it was filed alongside manila folders documenting other incidents.  On August 18, 2013, after the driver's log and PeopleNet data had been printed and placed in the manila folder, ADM received a spoliation letter from Mr. Helms.  This letter was passed on to Mr. Causey, who took no additional steps to preserve the at-issue information.

In November 2013, Mr. Causey packed the contents of his office into boxes in order to move into a different building.  In December 2013, prior to the boxes being moved, Mr. Causey took a medical leave from ADM.  While he was on leave, the boxes containing the contents of his office were moved to his new office by the maintenance crew.  Upon his return in January 2014, Mr. Causey unloaded the boxes, placing the manila folders into filing cabinets in his new office.

In January 2016, Mr. Causey received a request for the manila folder containing information about Defendant Sandy Turner's June 21, 2013 accident. At this point, Mr. Causey became aware that he no longer had the manila folder. He contacted PeopleNet to retrieve the lost information; however, PeopleNet had already deleted the relevant data pursuant to their document retention policy.  At no point between August 2013 and January 2016 did Mr. Causey receive any correspondence inquiring about or requesting information regarding this accident. Although Mr. Causey could not speak for ADM as a whole, he stated that he had done everything in his power to preserve the evidence.  He has no explanation as to why the at-issue manila folder is missing.

PeopleNet on-board software maintains electronic driver logs for all drivers working for ADM.  Driver logs contain the following information: miles driven, hours driven, starts and stops made, GPS coordinates and town/city names. PeopleNet also creates violation reports, such as when a driver works hours in excess of what is permitted under company policy.  In addition to the information

that is recorded by PeopleNet on a regular basis, the following information is recorded when a "triggering event"[3] occurs: speed, revolutions per minute (rpm), switches, and odometer.  This data is generated for thirty seconds prior to the triggering event and sixty seconds following the triggering event.

## II.   ANALYSIS

Federal Rule of Civil Procedure 37(e) governs the failure to preserve electronically stored information ("ESI").  This portion of the Rule was initially adopted in 2006, but underwent significant revisions in the 2015 Amendment in order to "foreclose[] reliance on inherent authority or state law to determine when certain measures should be used."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment.   The 2015 Amendment became effective on December 1, 2015, and applies to the facts at issue in Plaintiffs' Motion.

Rule 37(e) reads as follows:

(e) Failure to Preserve Electronically Stored Information.   If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the

---

[3] A "triggering event" is when a vehicle traveling twenty miles per hour or faster slows down at a rate of at least nine miles per hour per second.

party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

### A.    Application of Rule 37(e)

Four factors must be present for Rule 37(e) to apply: (1) there must have been a duty to preserve the ESI; (2) a party must have failed to take reasonable steps to preserve the ESI; (3) the ESI must have been lost as a result of the failure to take reasonable steps to preserve it; and (4) the ESI must not be recoverable through additional discovery.  See Fed. R. Civ. P. 37(e).  The duty to preserve ESI arises when the party reasonably anticipates litigation.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment.  A spoliation letter triggers a duty to preserve by putting a party on notice of potential litigation. Stanfill v. Talton, 851 F.Supp.2d 1346, 1363 (M.D. Ga. 2012).

Here, the duty to preserve the driver's log and additional PeopleNet data arose at the very latest when Mr. Helms faxed a spoliation letter to ADM on August 18, 2013.  At that point, ADM had a duty to take reasonable steps to preserve the ESI relating to the accident.  Tracy Causey testified that his procedure for keeping such data involved printing a single paper copy of the information and putting it in a manila folder, which he maintained until the information was requested.  This is the only evidence that has been presented to the Court on the steps taken to preserve the driver's log and PeopleNet data by

Defendants.   The Court finds this effort to be minimal, and concludes that Defendants failed to take reasonable steps to preserve the ESI related to this case.   Because there was only a single paper copy of this information, and because individuals other than Tracy Causey had access to the ESI while he was tasked with preserving it, the information has been lost forever and cannot be produced in discovery.   Based on these factors, the Court concludes that Rule 37(e) applies to this case.

**B.   Sanctions**

The Court will next determine the appropriate sanction for ADM's failure to preserve the driver's log and additional PeopleNet data.   Rule 37 provides two paths for imposing sanctions, detailed in subsections (e)(1) and (e)(2).   Each subsection carries different requirements and available sanctions.

To impose sanctions under Rule 37(e)(1), the court must find that the opposing party was prejudiced by the loss of the ESI.   If the court finds that a party is prejudiced by the failure to preserve, the court has broad discretion to impose sanctions, but "may order measures no greater than necessary to cure the prejudice."   Fed. R. Civ. P. 37(e)(1); Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment.   Subsection (e)(1) does not limit the court to specific sanctions, but does provide some examples of sanctions that the court might impose.   The advisory committee notes explain that the court could: (1) not allow the party responsible for the destruction of the ESI to introduce any evidence about that data; (2) allow the party prejudiced to introduce evidence or

8

make an argument to the jury regarding the effect of the loss of the ESI; or (3) give instructions to the jury to assist them in evaluating the evidence introduced or arguments made regarding the ESI.   Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment.   The only limitations on the sanctions available to the court are that the measure ordered must be no greater than necessary to cure the prejudice, and the court may not impose the severe measures that are set out in Rule 37(e)(2).  Fed. R. Civ. P. 37(e)(1); Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment.

The second path for imposing sanctions under Rule 37 is outlined in subsection (e)(2).  This subsection only applies if the Court finds that the party failed to preserve the data *intentionally*, in order to deprive the opposing party of its use in litigation.  If the Court finds that the failure to preserve was intentional, the Court may impose any of three specific, severe penalties:

1.  The court may presume or infer that the lost ESI was unfavorable to the party, when ruling on a pretrial motion or in a bench trial;

2.  The court may instruct the jury that it may or must presume that the ESI was unfavorable to the party that failed to preserve it; or

3.  The court may dismiss the action or enter a default judgment against the party that failed to preserve the ESI.

See Fed. R. Civ. P. 37(e)(2).  Unlike subsection (e)(1), subsection (e)(2) does not require a finding that the opposing party was prejudiced by the failure to preserve the electronically stored data.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 Amendment.  Prejudice is inferred by the court's finding of intent.  Id.

Although a judge may impose the severe measures set out in Rule 37(e)(2) when there is an intent to deprive, the judge is not required to impose any of these measures. Id.  The bottom line in sanctioning a party is that the remedy must fit the wrong to be redressed. Id.

Based on the facts presented, the Court concludes that ADM and Archer Daniels Midland Company acted with the intent to deprive Plaintiffs of using the driver's log and additional PeopleNet information in litigation.  As a practical matter, it is simply irresponsible to print a single paper copy of information which one has a duty to preserve under Fed. R. Civ. P. 26.  At the very least, Mr. Causey should have made additional efforts to ensure the preservation of these materials once the spoliation letter was received on August 18, 2013.  However, ADM had no written policy on the proper procedure for preserving information that may be relevant in foreseeable litigation, at least not that Mr. Causey was aware.  In addition to lacking a document preservation policy, ADM failed to ensure that these documents were maintained while in their sole possession. The documents were moved from one building to another, during which individuals unaware of their importance had access to and control over the information.  Further, no one from ADM or the law firm representing Defendants contacted Mr. Causey about these documents or requested copies of these documents until January 2016, despite numerous requests for the documents by Plaintiffs' attorneys.  All of these facts, when considered together, lead the Court to conclude that the loss of the at-issue ESI was beyond the result of mere

10

negligence.   Such irresponsible and shiftless behavior can only lead to one conclusion—that ADM and Archer Daniels Midland Company acted with the intent to deprive Plaintiff of the use of this information at trial.

Accordingly, the Court believes severe measures, such as those discussed in subdivision (e)(2), are most appropriate to remedy the wrong that has occurred in this case.   Specifically, the Court considers the adverse inference jury instruction, outlined in Rule 37(e)(2)(B), to be the proper sanction.  The Court will instruct the jury that it *must* presume that the lost information, including the driver's log and all other data that was collected through PeopleNet, was unfavorable to ADM and Archer Daniels Midland Company.  This presumption applies only to Defendants ADM and Archer Daniels Midland Company, and not to the other Defendants involved in this lawsuit.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions is GRANTED. The Court will instruct the jury that it must presume that the lost information was unfavorable to ADM Trucking, Inc. and Archer Daniels Midland Company.

**SO ORDERED**, this the 27th day of April, 2016.

/s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

les